UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

    Case No. 20-20072
    Hon. Denise Page Hood

ALPHA AMADOU DIALLO.

    Defendant.
_____/

**ORDER GRANTING DEFENDANT'S SECOND MOTION FOR BOND**
**[#29]**

**I. BACKGROUND**
  **A. Procedural Background**

This matter is before the Court on Defendant Alpha Amadou Diallo's ("Diallo") Second Motion for Bond. [ECF No. 29] On March 21, 2019, a criminal complaint was charged against Diallo for Procurement of Citizenship or Naturalization Unlawfully, in violation of 18 U.S. Code § 1425. Diallo initially appeared in front of Magistrate Judge Mona Majzoub on June 3, 2019. On June 10, 2019, Diallo consented to detention in front of Magistrate Judge Anthony Patti. [ECF No. 11] On May 4, 2020, this Court denied Defendant's Motion for Bond because Defendant did not adequately establish that he was not a flight risk. After reviewing the instant Motion, the Court finds that Defendant's risk of flight is minimal and **GRANTS** Defendant's Second Motion for Bond.

1

## B. Factual Background

On or about October 23, 1996, Diallo was ordered to return to his self-identified country of origin—Mauritania.[1] Diallo appealed that ruling to the Board of Immigration Appeals ("BIA"). On December 11, 1997, the BIA affirmed Diallo's removal. [ECF No. 26, Pg.ID 57] Despite his removal order, Diallo remained in the United States, and using an alias and other fictive information, he successfully petitioned for admittance as a political refugee from Guinea, his true country of origin. [ECF No. 1, Pg.ID 3]

After maintaining his status as a lawful permanent resident for five years, Diallo began the citizen naturalization process. On or about December 26, 2017, Diallo filed a Form N-400, Application for Naturalization. [ECF No. 26, Pg.ID 58] The Government indicates that when asked if he had "ever lied to any U.S. Government officials to gain entry or admission into the United States or to gain immigration benefits while in the United States," that Diallo checked "no." When asked if he had "ever been ordered removed, excluded, or deported from the United States," Diallo checked "no." And when asked if he had "ever been placed in removal, exclusion, rescission, or deportation proceedings," Diallo also checked "no." [ECF No. 26, Pg.ID 58-59]

---

[1] Defendant's country of origin is Guinea.

Diallo asserts that his life is endangered in Guinea. [ECF No. 23, Pg.ID 48-49] He also indicates that he has been working with counsel to file applications for asylum in both the United States and Canada. [*Id.*]

Pretrial Services reported that an Immigration and Customs Enforcement query revealed Diallo has an outstanding warrant and a final order of removal dated December 11, 1997, and that the United States Marshals advised they have received a detainer. According to Diallo, he was employed as an Uber driver prior to his detention. [ECF No. 23, Pg.ID 49] Diallo has provided the Court with his family's address, which is where he will reside on bond.

## II.   LEGAL ANALYSIS

### A. Standard of Review

The Bail Reform Act ("BRA"), 18 U.S.C. § 3142, ordinarily requires that a defendant be released pending trial. *See* 18 U.S.C. § 3142(e). A court may, however, order detention of the defendant if the court finds that no set of conditions will reasonably assure the appearance of the person at future court proceedings and the safety of the community. *See* 18 U.S.C. § 3142(f). When considering detention, the Court is required to use "the least restrictive [] conditions or combination of conditions" that will assure the person's appearance. § 3142(c).

In reaching this determination, the district court must take into account available information concerning: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger posed by the defendant's release (i.e., "the Section 3142(g) factors"). 18 U.S.C. § 3142(g).

The issue before the Court is whether an individual who violated immigration laws, is eligible for bail under the Bail Reform Act; and if so, under what conditions. Under the BRA, "Congress chose not to exclude deportable aliens from consideration for release or detention in criminal proceedings." *United States v. Adomako*, 150 F.Supp.2d 1302, 1304 (M.D.Fla. 2001). For purposes of bail, immigration status is not a factor for consideration in § 3142(g). *See* § 3142; *United States v. Trujillo–Alvarez*, 900 F.Supp.2d 1167, 1174 (D. Or. 2012).

**B. Analysis**

Diallo asserts that he can live with his family. Diallo contends that the Court can assure his presence in Court by enrollment in the Department of Homeland Security's Intensive Supervision of Appearance Program ("ISAP"). ISAP is a monitoring program, which may include nightly curfews, electronic monitoring via GPS tethers, voice recognition software for telephone-based reporting, and intensive case management. Diallo argues that all of these procedures would

mitigate any potential flight risk and allow him to avoid deportation, while allowing him to live with his family.

Citing *Minh Ly v. Hansen*, Diallo argues that there must be a "strong and special justification" to indefinitely detain someone without a hearing. 351 F.3d 263, 271 (6th Cir. 2003). Although the Court agrees with Diallo's assertion, the Court notes that Diallo is not being indefinitely detained and consented to his detention. Diallo also cites *Rodriguez v. Holder*, from the Central District of California, to argue that ICE must provide an individual detained pursuant to 8 U.S.C. § 1226(c) with a hearing before an immigration judge prior to the defendant's 181st day of detention. No. CV 07-3239 TJH RNBX, 2013 WL 5229795, at *2 (C.D. Cal. Aug. 6, 2013).[2]

In response, the Government argues that Diallo's prior history of deceit illustrates the probability that he will not appear for Court. To support its argument the Government asserts that Diallo is "unworthy of trust" because he has repeatedly shown that he is willing to deceive the government to acquire what he desires. *See United States v. Scott*, 2012 WL 1068104 at *2 (E.D. Mich., June 12, 2012) (denying pretrial release because the defendant was untrustworthy).

---

[2] The Court does not dispute the validity of Diallo's cited cases but finds that they are inapplicable to the instant case. The issue before this Court concerns Diallo's detention and bond for the criminal violation of 18 U.S. Code § 1425. Diallo is still in the custody of the U.S. Marshal and has not been referred to Immigrations and Customs Enforcement.

Although the Government concedes that there is little information concerning Diallo, it contends that an immigration detainer is reason enough to consider him a flight risk. *See United States v. Salas-Urenas*, 430 Fed. Appx. 721, 723 (10th Cir. 2011) (finding that a defendant's immigration status and the existence of an ICE detainer are relevant considerations to weigh during a detention hearing); *but see United States v. Ailon-Ailon*, 875 F.3d 1334, 1337 (10th Cir. 2017) (finding that the existence of an ICE detainer did not present a flight-risk). Citing *United States v. Valadez-Lara*, the Government argues that "most courts have concluded the existence of an immigration detainer is a relevant factor for considerations when the court undertakes its assessment of a defendant's risk of flight." 2015 WL 1456530 at *6 (N.D. Ohio, March 30, 2015) (collecting cases).

In his Reply, Diallo argues that he satisfies all the requirements for pretrial release—he is not dangerous and not a flight risk. Diallo contends that Congress intended the standard of proof for flight risks to be very demanding. Citing the BRA's legislative history, Diallo asserts that Congress intended courts to detain individuals that pose a flight risk only in "extreme or unusual" circumstances. Bail Reform Act of 1983: Report of the Committee on the Judiciary, S. Rep No 98-147, 98th Cong, 1st Sess. 48 (1983); *see also United States v. Abrahams*, 575 F.2d 3, 8 (1st Cir. 1978) (ruling that the government must show a "rare case of extreme and unusual circumstances that justifies pretrial detention without bail"). Diallo further

argues that the Government's cited cases are distinguishable from his case because Diallo is nonviolent, has established roots, and ICE has not yet pursued Diallo's imminent deportation. Diallo further asserts that the risk of flight is low because he cannot return to the only other country that he has ties to—Guinea—because his political affiliations endanger him.

Diallo argues that the risk of contracting COVID-19 in jail was minimal when he filed his first Motion. Other than stating that he is "nearly 60 years old," Diallo has provided no medical records to support finding he is more susceptible to complications from the virus. [ECF No. 29, Pg.ID 130] Although Sanilac County jail has not reported any cases of COVID-19, the Court acknowledges that Diallo's concerns about COVID-19 are valid.

Diallo also notes that he has been detained for approximately one year, which is more time than he would serve if he was convicted of the instant offense. The defendant is charged with 18 U.S.C. § 1425(a).  He has no known criminal history; therefore, he is in Criminal History Category I.  He initially appeared on June 3, 2019.  Consequently, he has been in custody for 12 months. Assuming Diallo goes to trial and there is no adjustment for Acceptance of Responsibility, this would result in a Total Offense Level of 10 and Criminal History Category I and a guideline range of 6-12 months.

The Court finds that there are restrictions that would ensure Diallo's appearance in Court, such as strict home confinement. The Court also notes that an ICE detainer per se, does not establish "a serious risk that [the defendant] will flee" sufficient to support pretrial detention for a nonviolent offender. *See United States v. Ailon-Ailon*, 875 F.3d 1334, 1337 (10th Cir. 2017). While Diallo's immigration status would normally create some risk that he would flee, the court finds the risk of flight to be minimal in light of his ties to this country, having lived here with his family for decades[3] and the travel restrictions the world finds itself in with the COVID-19 pandemic.

In addition, the Sixth Circuit in *United States v. Veloz-Alonzo,* has held, the BRA presumes detention but allows for the permissive release of a criminal defendant. 910 F.3d 266, 270 (6th Cir. 2018). The INA mandates the detention of certain illegal aliens. Reading the BRA's permissive use of release to supersede the INA's mandatory detention does not follow logically nor would doing so be congruent with our canons of statutory interpretation. One of the primary purposes of the BRA is to ensure the appearance of criminal defendants at judicial proceedings. To the extent that ICE may fulfill its statutory mandates without impairing that purpose of the BRA, there is no statutory conflict and the district court may not enjoin the government's agents.

---

[3] Defendant is currently classified as a lawful permanent resident. [ECF No. 29, Pg.ID 127]

An ICE detainer implies that ICE may immediately detain a defendant and begin removal proceedings. It may be that ICE will act on its Detainer against Diallo. However, the matter before this Court is whether Diallo is entitled to bond based upon his potential danger to the community or his flight risk.[4] The Court believes that Defendant poses no danger to the community and that he is not a flight risk.

### III. CONCLUSION

For the reasons set forth above,

IT IS HEREBY ORDERED that Defendant Alpha Amadou Diallo's Motion for Bond [#29] is **GRANTED.**

IT IS FURTHER ORDERED that Defendant is immediately released on an unsecured bond of $10,000.

IT IS FURTHER ORDERED that Defendant must self-quarantine within his home for 14 days.

IT IS FURTHER ORDERED that Defendant must comply with all terms and conditions set forth in the pretrial documents setting conditions of bail.

IT IS FURTHER ORDERED that Defendant shall be confined to his home, with electronic location monitoring to commence as soon as the Pretrial Services

---

[4] The issue of whether ICE may act on the Detainer is not before the Court. *See United States v. Veloz-Alonzo*, 910 F.3d 266, 270 (6th Cir. 2018).

Department can safely install the necessary electronic monitoring equipment and upon such other conditions as the Pretrial Services Department deems necessary.

IT IS FURTHER ORDERED that, within 24 hours of release from BOP custody, Defendant shall call the Pretrial Services Department to schedule an appointment.

IT IS SO ORDERED.


                                            s//Denise Page Hood
                                            DENISE PAGE HOOD

DATED:    July 2, 2020                           Chief Judge